The Honorable THOMAS S. ZILLY

1
2
3
4
5
6

7       **UNITED STATES DISTRICT COURT**
        **WESTERN DISTRICT OF WASHINGTON**
8       **AT SEATTLE**

9   PACIFIC BELLS, LLC; BRUNSWIKST,          NO.  21-cv-01515-TSZ
    LLC; and WOW DISTRIBUTING, INC.,
10  in their own and on behalf of similarly
    situated employers,                       DEFENDANTS' MOTION TO
11                                             DISMISS (FED RULE CIV. PRO.
               and                             12(b)(1))
12
    MELISSA JOHNSTON; LENA                     NOTE ON MOTION CALENDAR:
13  MADDEN; JUDI CHAPMAN;
    KATHERINE SOLAN; JOHN                      FEBRUARY 18, 2022
14  EDMUNDSON; and MIKE LINDBO,
    individuals on their own behalf and on
15  behalf of similarly situated employees,

16                    Class Plaintiffs,

17        v.

18  JAY INSLEE, in his capacity as Governor
    of the State of Washington; CAMI FEEK,
19  in her capacity as the Commissioner and
    Chief Executive Officer of the Washington
20  Employment Security Department;
    DONALD CLINTSMAN, in his capacity
21  as the Acting Secretary of the Washington
    Department of Social and Health Services;
22  and THE LONG-TERM SERVICES AND
    SUPPORTS TRUST FUND, an employee
23  benefit plan,

24                    Defendants.

25
26

# I.      INTRODUCTION

Plaintiffs seek to use the equitable powers of this Court to stop a state program for long-term care benefits in its tracks, but such a request must fail. Congress, in the Tax Injunction Act, recognized and protected against the danger of using the federal courts to interfere with state taxation and governance. The Constitution provides similar protection in the Eleventh Amendment. Plaintiffs cannot invoke this Court's jurisdiction when their only injuries cannot be remedied by this Court or will not be felt for years or decades, or quite possibly never.

Specifically, Plaintiffs ask this court to enjoin the collection of premiums for Washington's publicly-funded long-term care insurance program, declare the collection of such premiums unlawful, and order the State to make restitution of any premiums collected. They make this request even though they could make recourse to the courts of the State of Washington to remedy their alleged injuries. Their claims are straightforwardly barred by the Tax Injunction Act, 28 U.S.C. § 1341, which deprives this Court of jurisdiction over these claims.

The Eleventh Amendment likewise deprives this Court of jurisdiction over any claims made against the State itself. This immunity prohibits claims for retrospective relief which would operate against the State, like the Plaintiffs' claims for restitution made in this matter. Eleventh Amendment immunity also prohibits claims against the "Long-Term Services and Supports Trust," which, to the extent it exists as an independent legal entity at all, is an instrumentality of the State of Washington, immune from suit in the federal court system.

Moreover, jurisdiction does not exist because Plaintiffs lack standing. Because this Court cannot stop the imposition and collection of the premiums Plaintiffs object to, and cannot order the State to pay any such premiums collected back to those who paid them, this Court cannot remedy Plaintiffs' alleged injuries. Aside from the employers' duty to withhold and the employees' duty to pay these premiums, Plaintiffs have no concrete, particularized injuries fairly traceable to any of the Defendants. Employee plaintiffs' concerns about infringements on their right to travel are too vague and speculative to convey standing. In the absence of injuries that

DEFENDANTS' MOTION TO DISMISS
-- NO.  21-CV-01515-TSZ

2

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

are both concrete and remediable, the Court lacks Article III jurisdiction, and the Court should dismiss Plaintiffs' complaint.

In any event, Plaintiffs' claims are not ripe. Washington's governor has directed the state Employment Security Department to temporarily refrain from accepting premiums from employers, and legislative leadership have encouraged employers to temporarily refrain from collecting premiums from employees, in order to allow the Legislature to adopt amendments to the WA Cares program in the upcoming legislative session. The intended delay reduces the immediate impacts and any amendments may negate Plaintiffs' concerns with the bill, rendering judicial review unnecessary.

## II.    FACTS

### A.    WA Cares is a Public Social Insurance Program Which will Provide Long-Term Services and Supports to Washington Workers

In 2019, Washington State enacted the Long-Term Services and Supports (LTSS) Trust Program known as "WA Cares."[1] Wash. Laws of 2019, ch. 363. It has been amended in both of the subsequent legislative sessions since. Wash. Laws of 2020, ch. 98; Wash. Laws of 2021, ch. 113. But the basic structure of the program remains the same as it was enacted initially. Starting in 2022, people working in Washington State will pay a 0.58 percent payroll tax on the wages they earn, called a "premium" in the law. Wash. Rev. Code § 50B.04.080. That premium funds a benefit of 365 "units" of long-term care for people both qualified and eligible under the program. Wash. Rev. Code § 50B.04.060. The "unit" is one-hundred dollars adjusted for inflation and to ensure solvency of the program. Wash. Rev. Code §§ 50B.04.010(3), .040. The sorts of services available under the program include home delivered meals, transportation, in-home personal care, and other services that people may need as they age and are no longer able to care for themselves without assistance. Wash. Rev. Code § 50B.04.010(2).

---

[1] *See* wacaresfund.wa.gov.

A person becomes "qualified" in one of two ways. First, a person is qualified if they pay premiums for at least ten years, "without interruption of five or more consecutive years." Wash. Rev. Code § 50B.04.050(1)(a). Second, a person is qualified if they pay the premium for at least three years within the last six years of their application for benefits. Wash. Rev. Code § 50B.04.050(1)(b). Premiums are withheld from the pay of Washington wage earners by their employers, and remitted to the Washington State Employment Security Department (ESD). Wash. Rev. Code § 50B.04.080. These premium payments are due quarterly. Wash. Admin. Code § 192-910-010.

A person is "eligible" if, upon an evaluation by the Washington State Department of Social and Health Services (DSHS) they are determined to need assistance with at least three activities of daily living.[2] Wash. Rev. Code § 50B.04.060. To be eligible, a person must also be a Washington State resident and not have already exhausted their total lifetime allotment of benefit units. Wash. Rev. Code § 50B.04.010(6).

If eligible, the person may arrange for a qualified provider to provide LTSS services to them, and DSHS will pay the provider directly. Wash. Rev. Code § 50B.04.060, 070. DSHS is responsible for ensuring that all LTSS providers meet certain minimum qualifications and are registered to receive payment under the program. Wash. Rev. Code § 50B.04.020(3).

**B.    Washington State Implemented WA Cares To Address a Looming Crisis in Long-Term Care**

In enacting WA Cares, the Washington State Legislature made detailed findings specifying its rationale for creating the program. Wash. Rev. Code § 50B.04.900. The Legislature found that the private marketplace for long-term care insurance "is broken." *Id.* "Long-term care is not covered by Medicare or other health insurance plans, and the few private long-term care insurance plans that exist are unaffordable for most people, leaving more than

---

[2] "Activities of daily living" is a term of art, and includes such things as eating, dressing, and personal hygiene. *See* Wash. Admin. Code § 388-106-0010. For the purposes of this motion, it is sufficient to state that eligibility for WA Cares benefits is conditioned on the need for such benefits.

4

ninety percent of seniors uninsured for long-term care." *Id.* In order to deal with this reality, Washington State residents rely on informal, unpaid caregivers for their needs, valued at approximately "eleven billion dollars" annually as of 2015. *Id.* But, due to demographic changes, reliance on informal care will not be feasible in the future: "Today, there are around seven potential caregivers for each senior, but by 2030 that ratio will decrease to four potential caregivers for each senior." *Id.*

The combination of increased future need and the difficulty of obtaining private insurance creates immense pressures on the state budget. People who need long-term care and who are uninsured for it generally must pay out of pocket until they become impoverished and eligible for long-term care through the Medicaid program. *Id.*; *see also generally* Wash. Rev. Code ch. 74.09. "Under current caseload and demographic projections, an alternative funding mechanism for long-term care access could save the medicaid program eight hundred ninety-eight million dollars in the 2051-2053 biennium." Wash. Rev. Code § 50B.04.900. Decreased reliance on informal, unpaid caregivers can also result in additional benefits to the state, because informal caregivers would not have to leave the workforce, thereby losing "an average of three hundred thousand dollars in their own income and health and retirement benefits." *Id.*

For these reasons, the Washington State Legislature found: "The creation of a long-term care insurance benefit of an established dollar amount per day for three hundred sixty-five days for all eligible Washington employees, paid through an employee payroll premium, is in the best interest of the state of Washington." Wash. Rev. Code § 50B.04.900(10).

**C.   Legislative Leaders and Governor Inslee Intend to Delay Implementation of WA Cares and to Change the Program**

On December 17, 2021, Governor Inslee along with Senate Majority Leader Andy Billig and House Speaker Laurie Jinkins released a statement announcing the delay of the WA Cares

5

program to allow the Legislature to consider and make adjustments to WA Cares.[3]  Governor Inslee stated that he will order ESD not to collect the premiums from employers before the first quarter of payments come due to the state in April. Employers will not be subject to penalties and interest for not withholding the payments from employees' wages before April, and indeed legislative leadership encouraged employers to decline to do so. Senator Billig and Speaker Jinkins stated that they "fully intend" to make improvements to the program during the 2022 legislative session, which begins in January 2022, and plan to delay implementation of the premium assessment through the 2023 legislative session to allow the legislature to consider recommendations from the Long-Term Services and Supports Trust Commission and evaluate and pass policy reforms as needed. Changes to the program may affect non-residents, people near retirement, those who choose to retire outside of Washington, those who have opted out of the program, and potentially others.

On December 22, Governor Inslee formally directed ESD in a letter to not accept premiums from employers in advance of quarterly payments due in April 2022 and to not find employers non-compliant when they do not assess premiums.[4]

### III.    STANDARD OF REVIEW

A party may raise a challenge to the court's subject matter jurisdiction in a motion under Rule 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Such challenges can be facial or factual. *Id.* "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v.*

---

[3] Press Release, Governor Inslee, Inlee, Billig, Jinkins statement on delaying WA Cares Fund premium assessment (Dec. 17, 2021) available at https://www.governor.wa.gov/news-media/inslee-billig-jinkins-statement-delaying-wa-cares-fund-premium-assessment.

[4] Letter from Governor Inslee to Cami Feek, Commissioner of the Employment Security Department (Dec. 22, 2021) available at https://www.governor.wa.gov/sites/default/files/Letter%20to%20Commissioner%20Feek%20%28signed%29.pdf?utm_medium=email&utm_source=govdelivery.

*Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual challenge can be raised in a 12(b)(1) motion, and the court may consider extrinsic evidence outside of the pleadings, without converting the motion into a summary judgment motion. *Id.* Such extrinsic evidence may include information available in the public record. *White*, 227 F.3d at 1242. If such extrinsic evidence is offered, the plaintiff may not rest on the pleadings, but must affirmatively prove those facts necessary to the court's jurisdiction. *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). The court need not presume the truthfulness of the plaintiffs' allegations made in the complaint. *White*, 227 F.3d at 1242.

## IV.   ARGUMENT

The presumption is "that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991). In this case, the court lacks subject matter jurisdiction for multiple reasons. As a threshold matter, in light of the delay of the WA Cares program announced on December 17, 2021, Plaintiffs' claims are unripe for this Court's consideration.

But even notwithstanding the delay in implementation of the WA Cares program, Plaintiffs sue primarily to enjoin and declare invalid the imposition of premiums to fund the program and, to the extent any premiums are collected during the pendency of this lawsuit, for restitution of any premiums collected by Washington State. But this Court does not have the power to grant these remedies under the Tax Injunction Act (TIA), 28 U.S.C. § 1341. The Court also does not have the power to grant Plaintiffs their requested restitution under the Eleventh Amendment. And, to the extent the "Long-Term Services and Supports Trust" is an independent legal entity with the capacity to sue and be sued, it is an instrumentality of the State of Washington with Eleventh Amendment immunity from suit in the federal courts.

DEFENDANTS' MOTION TO DISMISS
-- NO.  21-CV-01515-TSZ

7

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

1    Jurisdiction is also lacking because Plaintiffs lack standing. The Tax Injunction Act and

2    the Eleventh Amendment bar this Court from remedying any injury from the collection of

3    premiums. And Plaintiffs have not alleged concrete and individual harms to their right to travel.

4    Absent injuries that are both concrete and remediable by a federal court, Plaintiffs have not

5    demonstrated standing, depriving this Court of Article III jurisdiction.

6    **A.   Plaintiffs' Claims are Unripe because Implementation has been Delayed and the WA Cares Statute will Likely be Amended**

7

8    Washington State legislative leaders have indicated they intend to substantially change

9    the WA Cares program in ways that may completely negate Plaintiffs' claims, and to delay

10   implementation of the program for at least a year in any event. To accommodate these plans,

11   Governor Inslee has directed ESD not to collect WA Cares premiums from employers until April

12   2022 at the earliest, and to forego any interest or penalty assessments on employers that do not

13   withhold premiums from employees. Because it is uncertain at this time when WA Cares may

14   fully take effect, and what effects it will have, Plaintiffs' claims are not ripe for this Court's

15   adjudication.

16   The ripeness requirement is designed "to prevent the courts, through avoidance of

17   premature adjudication, from entangling themselves in abstract disagreements[.]" *Ohio Forestry*

18   *Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (quoting *Abbott Laboratories v. Gardner*,

19   387 U.S. 136, 148-49 (1967)). The ripeness inquiry has a constitutional component rooted in the

20   "case and controversy" requirement of Article III of the Constitution, and a prudential

21   component that focuses on whether the record can adequately ensure effective review. *City of*

22   *Auburn v. Qwest Corp*., 260 F.3d 1160, 1171 (9th Cir. 2001). The prudential component has two

23   factors: 1) whether the issues are fit for judicial decision, and 2) whether the parties will suffer

24   hardship if the court declines to consider the issues. *San Diego County Gun Rights Comm. v.*

25   *Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996) (citing *Abbott Labs.*, 387 U.S. at 149). Plaintiffs fail

26   on both counts.

### 1.    Plaintiffs' claims are not constitutionally ripe

A court may not hear a case unless "there exist a constitutional 'case or controversy,' [and] the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). Courts must consider whether the plaintiffs face "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," or, by contrast, if the alleged injury is too "imaginary" or "speculative" to support jurisdiction. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Plaintiffs do not need to await actual injury before entertaining a challenge to a statute, but the threat of enforcement must be at least "credible." *See City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1172 (9th Cir. 2001) (citing *Thomas*, 220 F.3d at 1140).

Here, Plaintiffs face no immediate risk of enforcement because ESD will not collect premiums until April 2022. Employer plaintiffs will face no penalty for declining to withhold premiums from employees, and state legislative leadership has asked employers not to do so. Even if employee plaintiffs' employers persist in withholding premiums (and it is not clear they will), the Governor has indicated those withholdings can and should be returned if the legislature amends the program.[5] Thus, neither employer nor employee Plaintiffs face the immediate dilemma of paying or withholding the premium or violating the statute by not paying or withholding the premium. *See Janet Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57, 113 S. Ct 2485 (1993). The threat of premium assessment as claimed by Plaintiffs is speculative. *See Qwest Corp.*, 260 F.3d at 1172.

Further, Plaintiffs are asking this Court to review, and block, a program that likely will look substantially different in a matter of months. While implementation is effectively delayed, the legislature plans to address issues that may affect or even resolve Plaintiffs' claims, including

---

[5]Letter from Governor Inslee to Cami Feek, Commissioner of the Employment Security Department (Dec. 22, 2021) available at https://www.governor.wa.gov/sites/default /files/Letter%20to%20Commissioner%20Feek%20%28signed%29.pdf?utm_medium=email&utm_so urce=govdelivery.

DEFENDANTS' MOTION TO DISMISS -- NO. 21-CV-01515-TSZ

9

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

impacts on non-residents, people close to retirement, and those residents who choose to retire outside of Washington.[6] As discussed below with regard to standing, Plaintiffs' claimed injuries regarding eligibility for benefits are speculative in that they contemplate scenarios years from today. In light of the intended delay, they are even more uncertain because the concerns Plaintiffs raise may never even arise depending on what actions the Legislature takes. Thus, Plaintiffs' claims are not "definite" or "concrete" but rather "speculative" and "abstract." *See Thomas*, 220 F.3d at 1138; *Babbitt*, 442 U.S. at 298. Therefore, Plaintiffs fail to meet the constitutional requirement of ripeness.

### 2.     Plaintiffs' claims are not fit for adjudication and delaying adjudication will not result in any hardship to Plaintiffs

Because WA Cares is likely to change substantially in the next few months, Plaintiffs' claims are not fit for review by this Court. Further, because Plaintiffs are not likely to suffer any legal or practical detriment from the implementation of WA Cares, delaying adjudication of their claims will not result in any hardship to them.

Fitness for adjudication rests primarily on whether a case would "benefit from further factual development," and therefore cases presenting purely legal questions are more likely fit for judicial review. *Iowa League of Cities v. EPA*, 711 F.3d 844, 867 (8th Cir. 2013). Here, although Plaintiffs' claims are primarily legal in nature, they are nonetheless not fit for decision because they depend entirely on legal requirements that may well change. Washington legislative leadership has stated that it "fully intend[s]" to make improvements to the program during the 2022 legislative session and that delaying implementation of the premium assessment, first administratively through April 2022 and then by statute through the 2023 legislative session, will allow the legislature to pass policy reforms and consider recommendations from the Long-

---

[6] While the State acknowledges that the legislature plans to address issues related to Plaintiffs' claims, the State does not concede that Plaintiffs' claims have merit.

10

1    Term Services and Supports Trust Commission. Thus, the law is likely to change and Plaintiffs'

2    claims, though legal in nature, are not fit for review.

3         Nor do Plaintiffs face hardship from delayed adjudication. Hardships to complaining

4    parties include adverse legal effects or practical harm. *Ohio Forestry Ass'n*, 523 U.S. at 733-34;

5    *Anchorage v. United States*, 980 F.2d 1320, 1326 (9th Cir. 1992). Adverse legal effects are those

6    that command an individual or entity to do something; grant, withhold, or modify a formal legal

7    license, power, or authority; subject an individual or entity to civil or criminal liability; or create

8    legal rights or obligations. *See United States v. Los Angeles & Salt Lake R. Co.*, 273 U.S. 299,

9    309-310 (1927). Practical harm involves direct effects to an individual or entity's day-to-day

10   operations. *See Ohio Forestry Ass'n*, 523 U.S. at 733-34; *Abbot Lab.*, 387 U.S. at 152-53.

11   Hardships can also involve forcing a party to modify its behavior in order to avoid further adverse

12   consequence. *Ohio Forestry Ass'n*, 523 U.S. at 734. No such consequence is present here.

13        Because the legislature will likely further delay the implementation of the program and

14   has committed to making relevant, substantive changes in the upcoming legislative session, and

15   because employers can choose to not collect premiums without fear of penalties during this

16   effective "pause", Plaintiffs likely do not face immediate impacts that judicial review would alter

17   or alleviate. The postponement of review of Plaintiffs' claims will not directly affect the

18   employer or employee Plaintiffs until at least April 2022 but most likely until after the 2023

19   legislative session. *See Ohio Forestry Ass'n*, 523 U.S. at 733-34; *Abbot Lab.*, 387 U.S. at 152-53.

20   And Plaintiffs will not have to modify their behavior. *See Ohio Forestry Ass'n*, 523 U.S. at 734.

21   Thus, Plaintiffs will not experience practical harm or have to modify their behavior to avoid

22   adverse consequence. *See Ohio Forestry Ass'n*, 523 U.S. at 733-34; *Abbot Lab.*, 387 U.S.

23   at 152-53.

24        Plaintiffs fail to meet the prudential requirement of ripeness. Given the delay in WA

25   Cares, the timing of Plaintiffs' claims cause exactly what the ripeness doctrine seeks to prevent

26

DEFENDANTS' MOTION TO DISMISS
-- NO. 21-CV-01515-TSZ

11

1   — premature adjudication and the entanglement of the court in abstract disagreements. *See Ohio*

2   *Forestry Ass'n*, 523 U.S. at 732-33. Plaintiffs' claims are unripe.

3   **B.   The Tax Injunction Act Bars Plaintiffs' Requests to Enjoin the Collection of WA Cares Premiums, Declare Premiums Invalid, and Order Restitution of Premiums**

4

5         All of Plaintiffs' claims, brought under ERISA, the U.S. Constitution, the ADEA, and

6   state statutory and common law, are barred by the TIA. This Court does not have jurisdiction.

7         "The district courts shall not enjoin, suspend, or restrain the assessment, levy, or

8   collection of any tax under State law where a plain, speedy, and efficient remedy may be had in

9   the courts of such State." 28 U.S.C. § 1341. "[T]he Act also prohibits a district court from issuing

10   a declaratory judgment holding state tax laws unconstitutional." *California v. Grace Brethren*

11   *Church*, 457 U.S. 393, 408 (1982). The TIA also forbids actions to refund state taxes. *May*

12   *Trucking Co. v. Or. Dept. of Transp.*, 388 F.3d 1261, 1274 (9th Cir. 2004).

13         The TIA has "two closely related, state-revenue-protective objectives: (1) to eliminate

14   disparities between taxpayers who could seek injunctive relief in federal court . . . and taxpayers

15   with recourse only to state courts; and (2) to stop taxpayers, with the aid of a federal injunction,

16   from withholding large sums, thereby disrupting state government finances." *Hibbs v. Winn*, 542

17   U.S. 88, 104 (2004). The TIA is a "broad jurisdictional barrier . . . enacted to confine

18   federal-court intervention in state government." *Arkansas v. Farm Credit Servs. of Cent.*

19   *Arkansas*, 520 U.S. 821, 821 (1997) (quoting *Moe v. Confederated Salish and Kootenai Tribes*

20   *of Flathead Reservation*, 425 U.S. 463, 470 (1976)) (internal quotation marks omitted). The TIA

21   applies to claims under the Employee Retirement Income Security Act (ERISA). *Ashton v. Cory*,

22   780 F.2d 816, 819 (9th Cir. 1986); *Ret. Fund Trust of Plumbing v. Franchise Tax Bd.*,

23   909 F.2d 1266, 1272 (9th Cir. 1990) ("ERISA does not create an exception to [the TIA], even

24   though federal courts have exclusive jurisdiction over ERISA claims.").[7] The TIA also applies

25   ─────────────
         [7] Other circuits of the Court of Appeals have held that adequate state court procedures do not exist to
26   remedy ERISA claims because ERISA vests exclusive jurisdiction in federal court. *See Chase Manhattan Bank,*
     *N.A. v. City & County of San Francisco*, 121 F.3d 557, 558-59 (9th Cir. 1997) (affirming *Ashton* in spite of

DEFENDANTS' MOTION TO DISMISS
-- NO. 21-CV-01515-TSZ                                    12                    ATTORNEY GENERAL OF WASHINGTON
                                                                                      7141 Cleanwater Dr SW
                                                                                         PO Box 40124
                                                                                    Olympia, WA 98504-0124
                                                                                        (360) 586-6565

to claims that state taxes are unconstitutional. *Grace Brethren Church*, 457 U.S. at 417. And nothing in the language of the Age Discrimination in Employment Act contradicts the broad jurisdictional barrier of the TIA. *See generally* 29 U.S.C. §§ 621 – 634.

Here, Plaintiffs seek exactly what the TIA prohibits: an injunction enjoining the collection of payroll taxes. Dkt. 1 at 20. Plaintiffs ask this court to enjoin the State from "collecting the payroll premium of .58% from employee wages." *Id.* They further ask this court, if any provision of WA Cares is unlawful, to strike the entire act, including premium assessments, and to provide them restitution for all amounts paid. *Id.* Because WA Cares premiums are taxes for purposes of 28 U.S.C. § 1341, and because Plaintiffs could make recourse to Washington State courts for a remedy, they cannot make their claims in federal court.

### 1.     WA Cares Premiums are taxes for the purposes of the Tax Injunction Act

The TIA prevents federal court interference with the collection of state taxes. The premiums imposed by WA Cares are taxes for the purposes of the Act.

It does not matter that the Washington State Legislature named the assessment a premium instead of a tax. There is no question that state-imposed payments tied to wages to fund social insurance programs are taxes protected by the statute. *See Grace Brethren Church*, 457 U.S. at 417 (holding TIA applied to an excise tax on wages that funded a state unemployment insurance program). And the statutory label on a particular assessment is not dispositive for its treatment under the TIA. *MCI Communications Servs., Inc. v. City of Eugene, Or.*, 359 Fed. Appx. 692, 695 (9th Cir. 2009) (holding municipal charge called a "fee" was a tax for the purposes of the TIA); *see also Empress Casino Joliet Corp. v. Balmoral Racing Club,*

---

disagreement from the Second, Fifth, and Sixth Circuit Courts of Appeals); *see also Darne v. State of Wis. Dept. of Rev.*, 137 F.3d 484, 489-90 (7th Cir. 1998) (adopting the reasoning of the Ninth Circuit). In the Ninth Circuit, it is clear that the TIA prevents federal court interference in the collection of state taxes due to claims arising under ERISA where an adequate state court remedy exists. *Chase Manhattan Bank*, 121 F.3d at 558-59. The United States Supreme Court has reserved this issue on two occasions. *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for So. Cal.*, 463 U.S. 1, 20 n. 21, 103 S.Ct. 2841 (1983); *De Buono v. NYSA-ILA Medical and Clinical Services Fund*, 520 U.S. 806, 810 n. 5, 117 S.Ct. 1747 (1997).

DEFENDANTS' MOTION TO DISMISS
-- NO.  21-CV-01515-TSZ                    13                    ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

*Inc.*, 651 F.3d 722, 730-31 (7th Cir. 2011). Whether a given assessment is covered by the TIA is a matter of federal, not state, law. *Empress Casino*, 651 F.3d at 728-29.

In the Ninth Circuit, a three factor test is used to determine if a given monetary assessment is a tax for the purposes of the TIA. *Qwest Corp. v. City of Surprise*, 434 F.3d 1176, 1183 (9th Cir. 2006) (citing *Bidart Bros. v. Cal. Apple Comm'n*, 73 F.3d 925, 931 (9th Cir. 1996)). The factors are: (1) the entity that imposes the charge; (2) the parties upon whom the charge is imposed; and (3) whether the charge is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed. *Id.*

There is already clear United State Supreme Court precedent that charges of the kind imposed by WA Cares are protected by the TIA. Assessments made on wages for the purposes of funding a state unemployment insurance program may not be enjoined or declared invalid by the federal courts. *Grace Brethren Church*, 457 U.S. at 417. WA Cares imposes a charge of a percentage of a wage for the purposes of funding a long-term care insurance program. *See generally* Wash. Rev. Code ch. 50B.04. There is no substantial distinction between a charge for unemployment insurance and a charge for long-term care insurance that would deprive the WA Cares funding source of the protection of the TIA. So it is no surprise that each of the three factors used in the Ninth Circuit also support finding that the WA Cares wage assessment is a tax. With regard to the first factor, charges imposed by the legislature, as opposed to an administrative agency, are more likely to be taxes. *Bidart Bros.*, 73 F.3d at 931. Here, the charge is directly imposed by statute in section 50B.04.080 of the Washington Revised Code. The second factor also supports TIA protection, because the WA Cares premium is imposed on a broad class of payers. "An assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class." *Id.* And here, it is all Washington wage earners who are subject to it, which is a "broad class" for the purposes of the TIA. *See Lavis v. Bayless*, 233 F.Supp. 2d 1217, 1220 (D. Ariz. 2001) (holding assessment on all civil and criminal fines was imposed on a broad class). Finally, with respect to the third factor, assessments

DEFENDANTS' MOTION TO DISMISS -- NO. 21-CV-01515-TSZ

14

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

intended to provide a general benefit to the public may well be taxes even if placed in a special fund. *Id.* Here, the revenue generated from the premium is placed in a segregated account but is intended to provide a general benefit to the state through the long-term support services it funds. *See* Wash. Rev. Code § 50B.04.900; *see also Wright v. McClain*, 835 F.2d 143, 145 (6th Cir. 1987) (holding funds placed in segregated account were "no less for revenue raising purposes as distinguished from license or privilege fees, or punitive assessments."). For a plethora of reasons, including beneficial consequences to the state budget, state residents, and decreased reliance on informal care, WA Cares "is in the best interest of the state of Washington" not merely those who pay premiums. Wash. Rev. Code § 50B.04.900. *See also Empress Casino*, 651 F.3d at 731 (holding TIA applied to an assessment on casinos placed in a trust fund for the benefit of horse racing tracks).

Because the TIA applies to all of the Plaintiffs' claims, and the Plaintiffs ask this Court to restrain the collection of state taxes, the TIA prevents this Court from exercising jurisdiction unless there is no adequate state court remedy. *See Chase Manhattan Bank*, 121 F.3d at 559. As explained below, Plaintiffs do have access to adequate state court remedies.

### 2.    Plaintiffs have access to adequate state remedies

Because Plaintiffs can make recourse to Washington State courts for their remedy, the TIA prohibits this Court from exercising jurisdiction.

An adequate remedy for the purposes of the TIA is one that is "plain, speedy, and efficient." 28 U.S.C. § 1341. This requires remedies available in the state system to meet "certain minimal *procedural* criteria." *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 512 (1981). It is enough that a challenger have recourse to a full judicial determination, during "which she may raise any and all constitutional objections to the tax." *Id.* at 514. Common procedures requiring a taxpayer to pay their tax first and only then petition for a refund satisfy these procedural requirements. *Grace Brethren Church*, 457 U.S. at 414-15. Taxpayers may also be required to exhaust administrative remedies while maintaining the adequacy of available state court

DEFENDANTS' MOTION TO DISMISS -- NO. 21-CV-01515-TSZ

15

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

procedures. *Id.* On the other hand, indirect procedures in which a party must wait for another person or entity to raise a claim, or defend against one, are not adequate. *Retirement Fund Trust of Plumbing v. Franchise Tax Bd.*, 909 F.2d 1266, 1272 (9th Cir. 1990). It is the challenger's burden to prove that state court remedies are inadequate. *See Chase Manhattan Bank*, 121 F.3d at 560 (" . . . Chase has not shown it lacks a plain, speedy and efficient remedy under state law . . . .").

In this case, Plaintiffs do not allege that they have no adequate state court remedies for their alleged injuries. *See generally* Dkt. #1.[8] Because this is a necessary element of their burden to invoke federal jurisdiction, this itself is sufficient to dismiss Plaintiffs' complaint under Rule 12(b)(1). *See Chase Manhattan Bank*, 121 F.3d at 560.

But, moreover, Plaintiffs cannot make that allegation. All Plaintiffs have access to administrative remedies and, following that, judicial review in which they can raise all of their claims. To the extent their claims are not controlled by mandatory exhaustion of administrative remedies, they may institute an action in a Washington State Superior Court under the Washington State Uniform Declaratory Judgments Act or the Washington State Administrative Procedure Act. These procedures clearly comply with the TIA's requirement of a plain, adequate, and efficient remedy.

WA Cares includes provision for administrative remedies for claims relating to "premium liability" and "premium collection." Wash. Rev. Code § 50B.04.120(2)(a), (b). Washington State has promulgated administrative regulations to govern these remedies. Wash. Admin. Code ch. 192-800. Among the rules governing administrative appeals of premium liability and collection is Washington Administrative Code section 10-08-220,[9] which maintains

---

[8] Plaintiffs do allege that they have no administrative remedies for their alleged injuries. Dkt. #1 at 6. This is false, as discussed below. Regardless, Plaintiffs do not allege that the Washington State courts would deny them a full and fair hearing, which is their burden to show under the Tax Injunction Act. 28 U.S.C. § 1341.

[9] Washington Administrative Code chapter 10-08 consists of the model rules of procedure, which have been incorporated by reference into the procedural rules governing appeals of WA Cares premiums. Wash. Admin. Code § 192-925-005.

DEFENDANTS' MOTION TO DISMISS
-- NO. 21-CV-01515-TSZ                16                ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

1  the right of a challenger to assert their constitutional and statutory rights. Using these procedures

2  an employee or an employer can appeal determinations that they owe or must remit WA Cares

3  premiums. If the challenger is unsuccessful, they have recourse to the Washington State courts

4  for judicial review. *See* Wash. Rev. Code §§ 34.05.510, 34.05.570, 50B.04.120(2)(c).

5  A petition for a declaratory order is also specifically allowed. Wash. Rev.

6  Code § 34.05.240; Wash. Admin. Code §§ 10-08-250—252. This allows an employee or

7  employer to petition for an administrative declaratory order that they are not subject to or should

8  not have to pay WA Cares premiums. *See id.* "A declaratory order has the same status as any

9  other order entered in an agency adjudicative proceeding," meaning it is also subject to judicial

10  review by the courts of the State of Washington. *See* Wash. Rev. Code §§ 34.05.240(8), .570(3);

11  *see also Courtney v. Washington Util. & Transp. Comm'n*, 414 P.3d 598, 604 n. 2 (Wash. Ct.

12  App. Div. 3 2018) (subjecting agency declaratory order to judicial review for whether the agency

13  correctly interpreted and applied the law).

14  Washington also has statutes permitting agencies to refund payments collected in error

15  of fact or law if such authorization does not otherwise appear. Wash. Rev. Code §§ 43.88.170,

16  43.01.072. These statutes allow Washington State agencies to hear and determine requests for

17  refunds in the absence of other explicit authority. *Blue Spirits Distilling, LLC v. Washington*

18  *State Liquor & Cannabis Bd.*, 478 P.3d 153, 160-61 (Wash. Ct. App. Div. 2 2020). A

19  Washington State agency could determine such a request via a formal administrative hearing,

20  which would be subject to judicial review following the issuance of an administrative order

21  under the Washington State Administrative Procedure Act. *Id.*, *see also* Wash. Rev.

22  Code §§ 34.05.413, .419 (allowing a person to make an application for an administrative hearing

23  and requiring an agency to take action on such application within 90 days). An agency could

24  also respond to such a refund request informally, in which case the agency's response would be

25  reviewable as an "other agency action" by Washington State courts. Wash. Rev.

26  Code § 34.05.570(4). Regardless of how the agency responded to a request for a refund, or even

1   if it made no response at all, its action would be reviewable by the courts of the state of

2   Washington. *See id.* (providing for judicial review of "an agency's failure to perform a duty that

3   is required by law to be performed.").

4        Under the Washington State Administrative Procedure Act, Plaintiffs may also argue that

5   exhaustion of any available administrative remedies would be futile, and proceed directly to

6   judicial review of actions taken by Defendants. Wash. Rev. Code § 34.05.534; *see also Orion*

7   *Corp. v. Washington*, 693 P.2d 1369, 1380 (Wash. 1985) (excusing exhaustion of administrative

8   remedies where such remedies were a "vain and useless act."). In this way, Plaintiffs would be

9   able to appeal directly to Washington State courts if they had sufficient reason that proceeding

10  through administrative channels were futile.

11       To the extent that the above administrative procedures do not apply to Plaintiffs' claims,

12  the Washington State Declaratory Judgment Act would give them a remedy. *See generally* Wash.

13  Rev. Code ch. 7.24. It allows suits against the State and its agencies. *See*, *e.g.*, *Amalgamated*

14  *Transit Union Local 587 v. State*, 11 P.3d 762, 806, 142 Wash. 2d 183 (2000) (affirming

15  declaratory judgment invalidating voter enacted initiative). Washington State has also waived

16  its sovereign immunity in its own courts so that it is liable as any other private party for tort

17  claims. RCW 4.92.090; *see also Wash. Dept. of Transp. V. Mullen Trucking 2005, Ltd.*,

18  451 P.3d 312, 315 (Wash. 2019) ("The State's waiver of immunity operates to make the State

19  presumptively liable in all instances in which the Legislature has not indicated otherwise.")

20  (quoting *Savage v. State*, 899 P.2d 1270, 1276 (Wash. 1995)) (internal quotation marks omitted);

21  *see also Micomonaco v. Washington*, 45 F.3d 316, 320 n. 2 (9th Cir. 1995) (Washington's waiver

22  of sovereign immunity applies only in its own courts; it does not affect Washington's Eleventh

23  Amendment immunity from suit in federal court). To the extent that the administrative

24

25

26

DEFENDANTS' MOTION TO DISMISS
-- NO. 21-CV-01515-TSZ

18

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

procedures set out in Washington law do not govern Plaintiffs' claims, then Plaintiffs can simply sue the State in state court for both a declaratory judgment and damages.[10]

Accordingly, Plaintiffs have access to state court remedies that would allow them to 1) enjoin collection of WA Cares premiums; 2) declare such premiums invalid; and 3) collect a refund for any such premiums already paid. These remedies are plain, speedy, and efficient as required by the TIA. Plaintiffs' claims for an injunction and declaratory judgment against WA Cares, including its premiums and for restitution of any premiums already paid, are prohibited in this Court by the TIA and they should be dismissed.

**C.     Monetary Relief is Barred by the Eleventh Amendment**

The Eleventh Amendment gives Washington State sovereign immunity from all claims for damages, including Plaintiffs' claims for restitution.

States are immune from suit in federal court for retrospective relief, such as damages. "Federal courts may not award retrospective relief, for instance, money damages or its equivalent, if the State invokes its immunity." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). While the text of the Eleventh Amendment does not explicitly lay out the States' immunity from suit, the Supreme Court "has long understood that Amendment to stand not so much for what it says, as for the broader presupposition of our constitutional structure which it confirms." *Allen v. Cooper*, 140 S.Ct. 994, 1000, 206 L. Ed. 2d 291 (2020) (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779, (1991)) (internal quotation marks omitted).

Congress can abrogate a state's Eleventh Amendment immunity, but only with constitutional authority to do so. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996). Further, Congress must express its intent to abrogate a state's Eleventh Amendment immunity "unequivocally." *Id.* (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)) (internal quotation marks omitted). None of Plaintiffs' federal claims involve an authorized, unequivocal abrogation

---

[10] At this point in the litigation, Defendants take no position on whether Plaintiffs have administrative remedies available to them that they must exhaust prior to bringing an action in Washington State Superior Court.

of Eleventh Amendment immunity. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91 (2000) ("The ADEA's purported abrogation of the States' sovereign immunity is accordingly invalid."); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (state officials in their official capacities are not "persons" under § 1983 subject to monetary damages); *Thiokol Corp. v. Dept. of Treasury*, 987 F.2d 376, 382 (6th Cir. 1993) ("In the absence of unmistakably clear language, we cannot hold that ERISA abrogates the Eleventh Amendment."); *see also Seminole Tribe of Florida*, 517 U.S. at 73 (holding Congress's Article I powers cannot abrogate a state's sovereign immunity under the Eleventh Amendment). And Plaintiffs' state law claims, obviously, cannot be brought in federal court without Washington's consent, which it has not given. *Micomonaco*, 45 F.3d at 320 n. 2.

Here, Plaintiffs seek restitution for premiums collected under WA Cares that they allege are unlawful. Dkt. #1 at 20. The Eleventh Amendment makes Washington State immune from suit for such relief. *Hawkins*, 540 U.S. at 437. Plaintiffs allege in their complaint that because they seek only the return of premiums they paid, restitution of those premiums does not jeopardize the state's "fiscal autonomy." Dkt. #1 at 16. But sovereign immunity does not depend on the State's fiscal autonomy. It is inherent in the United States' constitutional structure, whereby the States were not compelled to divest themselves of their sovereignty by joining the Union. *See Seminole Tribe of Florida*, 517 U.S. at 54.

The Eleventh Amendment straightforwardly forbids Plaintiffs' claims for restitution and they should be dismissed.

**D.**   **The "Long-Term Services and Supports Trust Fund" is Not a Proper Defendant and Should be Dismissed from this Lawsuit**

To the extent the Long-Term Services and Supports Trust Fund exists, it is an agency of the State of Washington immune from suit under the Eleventh Amendment. Under the doctrine of *Ex Parte Young*, a plaintiff may sue an officer of a state in their official capacity for prospective relief, but may not sue the state itself. *Pennhurst State School & Hosp. v. Halderman*,

465 U.S. 89, 100-102 (1984). Here, a "long-term services and supports trust account is created in the custody of the state treasurer." Wash. Rev. Code § 50B.04.100. DSHS is the only entity capable of making disbursements from the account. *Id.* To the extent that the account is a trust fund with the capacity to sue and be sued (which Defendants do not concede), it is an agency of the State of Washington and by naming it as a defendant Plaintiffs attempt to sue the State itself. The Eleventh Amendment prohibits this. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

**E.  Plaintiffs Lack Standing Because They Cannot Show their Injuries are Concrete and Particularized or Remediable**

As discussed above, this Court cannot remedy Plaintiffs' injuries related to the collection of WA Cares premiums because both prospective and retrospective relief is outside of this Court's jurisdiction. Because these injuries, incapable of remedy, are Plaintiffs' only alleged imminent, concrete, and particularized injuries, Plaintiffs lack standing. Plaintiffs' cursory, hazy allegations regarding a possible future infringement of their right to travel cannot suffice to demonstrate a constitutionally cognizable injury that would give this Court jurisdiction.

To have standing to make a claim, a plaintiff must have suffered an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Such injury must be "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Id.* (quotations and citations omitted). The injury must have been caused by the Defendant's allegedly unlawful conduct. *Id.* And, finally, "it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 43(1976)) (internal quotation marks omitted). A plaintiff generally does not have standing to raise the rights of others. *Nordlinger v. Hahn*, 505 U.S. 1, 10-11 (1992). And it is a plaintiffs' burden to show standing. "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *Lujan*, 504 U.S. at 561. A plaintiff lacks standing to challenge allegedly unlawful government conduct

1    without a particular and concrete effect on the plaintiff personally. *DaimlerChrysler Corp. v.*

2    *Cuno*, 547 U.S. 332, 344 (2006).

3        Here, the only relatively near-term injury that Plaintiffs allege—now further off and more

4    uncertain because of the announced delay—is that they have to pay WA Cares premiums or

5    collect them on behalf of their employees. *See* Dkt. #1. But as discussed above, this Court is not

6    able to redress that injury either in the form of prospective or retrospective relief. Consequently,

7    Plaintiffs' injuries related to the collection of WA Cares premiums are not redressable by this

8    Court, and Plaintiffs lack standing based on such injuries. *Pacific Legal Foundation v. State*

9    *Energy Resources Conservation & Development Comm'n*, 659 F.2d 903, 913 (9th Cir. 1981)

10   (holding that where it was a matter of speculation that favorable decision would redress injury

11   plaintiff lacked standing). The fact that the court could enjoin or declare invalid other parts of

12   the WA Cares program, which do not directly injure Plaintiffs, does not establish Plaintiffs'

13   standing. *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 772 (2000)

14   ("An interest unrelated to injury in fact is insufficient to give a plaintiff standing.").

15       Regarding the other aspects of WA Cares, which Washington will not implement for

16   years, neither the employer plaintiffs nor the employee plaintiffs have standing. For the employer

17   plaintiffs, they have no conceivable injury other than those related to the assessment of

18   premiums. Accordingly, because that injury cannot be redressed by this Court, and they have no

19   other injury, they lack standing.

20       The employee plaintiffs are also not injured in any respect by WA Cares other than the

21   assessment of premiums they do not want to pay. The employee plaintiffs do not claim they were

22   ever denied benefits nor did they apply for them. Dkt. #1. Indeed, it is impossible to predict

23   whether any of the employee plaintiffs will ever need, and be unable to obtain, the long-term

24   care benefits WA Cares provides. They only claim that they should not have to pay premiums

25   for benefits they are unlikely to receive. *Id.* And to the extent Plaintiffs claim that *no one* should

26   receive benefits under WA Cares, such a claim of general unlawfulness in the spending of public

DEFENDANTS' MOTION TO DISMISS
-- NO. 21-CV-01515-TSZ                    22                    ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

funds does not confer standing. *DaimlerChrysler Corp.* 547 U.S. at 343-44. ("A taxpayer plaintiff has no right to insist that the government dispose of any increased revenue it might experience as a result of his suit by decreasing his tax liability or bolstering programs that benefit him.").

Nor do employee plaintiffs demonstrate concrete and imminent infringement of their right to travel. To the extent the right to travel includes the right to freely cross state lines or temporarily visit another state, *see Saenz v. Roe*, 526 U.S. 489, 500 (1999), no plaintiff suggests they wish to or intend to do so. Even to the extent occasional out-of-state visits are commonplace, Plaintiffs have not suggested WA Cares interferes with their ability to make such visits. The boilerplate allegation that WA Cares "restricts the ability of those who desire to receive the benefit to move or travel out of state" merely recites a legal conclusion instead of stating a factual allegation. Dkt. #1 at 8-9. This cannot establish a cognizable injury for standing purposes. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The only allegations about travel come from those employees who might move away from Washington, one assumes permanently or at least on a long-term basis, for retirement. Dkt. #1 at 4. Two of the employee plaintiffs, currently Washington residents, assert that they may retire out of state. *Id.* Ms. Madden "plans to retire out of state." *Id.* Mr. Lindbo "is considering retiring out of state." *Id.* But there is no indication how far off in the future these potential retirements and moves are. Neither of them allege that any imminent and concrete application of WA Cares, other than the premium assessment, interferes with these plans and considerations. Such speculative, someday allegations are insufficient for purposes of Article III standing. *See Lujan*, 504 U.S. at 560-61.[11]

---

[11] Supposing these allegations are sufficient to establish concrete injury, they are nonetheless unripe for adjudication by this Court. Even if, someday, the WA Cares program could interfere with Ms. Madden's and Mr. Lindbo's plans to retire out of state, such interference would depend on a number of contingencies that may or may not come to pass. Such a hypothetical future claim is not ripe. *See Ass'n of Am. Med. Colleges v. U.S.*, 217 F.3d 770, 780 (9th Cir. 2000).

DEFENDANTS' MOTION TO DISMISS
-- NO.  21-CV-01515-TSZ

23

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

1   One of the employee plaintiffs alleges that she is an Oregon resident "whose wages will

2   be subject to payroll withholdings under WA Cares." Dkt. #1 at 4. But she does not allege that

3   she wishes to move to Washington State or any other state, or that anything about WA Cares is

4   preventing her from doing so. *See id.* She has not alleged any injury at all except that she is going

5   to have to pay premiums, which, as discussed above is not capable of remedy by this Court. In

6   the absence of a personal infringement on the right to travel, Plaintiffs do not have standing to

7   raise such a hypothetical injury. *Nordlinger*, 505 U.S. at 10-11.

8                               **V.   CONCLUSION**

9   For the reasons stated above, Plaintiffs' complaint should be dismissed under

10  Rule 12(b)(1).

11  DATED this 7th day of January, 2022.

12                               ROBERT W. FERGUSON
                                 Attorney General
13

14                               s/ William McGinty
                                 WILLIAM McGINTY, WSBA NO. 41868
15                               JACOB DISHION, WSBA NO. 46578
                                 *Assistant Attorneys General*
16

17                               DANIEL J. JUDGE, WSBA NO. 17392
                                 *Senior Counsel*
18
                                 Office of the Attorney General
19                               7141 Cleanwater Drive SW
                                 PO Box 40124
20                               Olympia, WA 98504-0124
                                 Telephone: (360) 586-6565
21                               Fax: (360) 586-6657
                                 Email: Daniel.Judge@atg.wa.gov
22                                      William.McGinty@atg.wa.gov
                                        Jacob.Dishion@atg.wa.gov
23

24                               *Attorneys for Defendant*

25

26

1

**CERTIFICATE OF SERVICE**

2

I certify that on the date indicated below, I caused the foregoing document to be

3

electronically filed with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to the following CM/ECF participants:

5

6
Richard J. Birmingham        richardbirmingham@dwt.com
Christine Hawkins            christinehawkins@dwt.com
7
Wm. Brent Hamilton, Jr.      brenthamilton@dwt.com

8

I certify under the penalty of perjury under the laws of the state of Washington that the

9

foregoing is true and correct.

10

EXECUTED this 7th day of January, 2022, at Olympia, Washington.

11

12

s/ William McGinty

13

WILLIAM McGINTY
*Assistant Attorney General*

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO DISMISS
-- NO.  21-CV-01515-TSZ

25

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565