1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

10

PACIFIC BELLS, LLC; BRUNSWIKST.,
LLC; WOW DISTRIBUTING, INC.;
MELISSA JOHNSTON; LENA MADDEN;
JUDI CHAPMAN; KATHERINE SOLAN;
JOHN EDMUNDSON; and MIKE LINDBO,
on their own behalf and on behalf of
similarly situated entities or persons,

11

Plaintiffs,

12

v.

13

14

15

16

17

JAY INSLEE, Governor of the State of
Washington; CAMI FEEK, Commissioner of
the Washington Employment Security
Department; JILMA MENESES,[1] Secretary
of the Washington Department of Social and
Health Services; and THE LONG-TERM
SERVICES AND SUPPORTS TRUST
FUND,

Defendants.

C21-1515 TSZ

ORDER

18

19

20

On November 9, 2021, plaintiffs commenced this class action to challenge the

validity of RCW Chapter 50B.04, the statute creating the Long-Term Services and

21

22

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Meneses, who was appointed in
January 2022, is hereby SUBSTITUTED for defendant Acting Secretary Donald Clintsman.

23

Supports ("LTSS") Trust Program, also known as "WA Cares."  _See_ Compl. (docket

no. 1); _see also_ https://wacaresfund.wa.gov.  In adopting WA Cares, Washington became

the first state in the nation to enact a long-term care ("LTC") benefit program that is

independent of Medicaid.  _See_ Foutch Decl. at ¶ 18 (docket no. 25); Ex. A to Birmingham

Decl. (docket no. 21-1 at 2).  Plaintiffs assert the following four claims:  (1) WA Cares[2]

is preempted by the Employee Retirement Income Security Act ("ERISA");

(2) WA Cares violates ERISA, as well as the Fourteenth Amendment of the United States

Constitution; (3) WA Cares violates ERISA, as well as the Age Discrimination in

Employment Act of 1967, as amended by the Older Workers Benefit Protection Act (the

"ADEA"); and (4) the LTSS Trust Fund is a multiple employer welfare arrangement, as

defined by ERISA, operating without a certificate of authority, and "the forfeiture

provisions [of WA Cares], the offering of impermissible benefits, and the setting of

premiums based on income violate ERISA," as well as defendants' "fiduciary duties

under ERISA and at common law, and insurance law."  Compl. at ¶¶ 7.1–7.8.[3]

---

[2] Beginning on July 1, 2023, WA Cares requires that employers collect premiums from their non-exempt employees through payroll deductions and remit such amounts to the Washington Employment Security Department.  RCW 50B.04.080(1)–(2).  Certain individuals are exempt from the assessment of premiums, including employees who timely apply for an exemption on the ground that they purchased LTC insurance before November 1, 2021, _see_ RCW 50B.04.085, and persons who are employed in Washington, but whose permanent residence is outside the State, _see_ Laws of 2022, ch. 2, § 2.  Self-employed persons, who do not have wages from which a premium can be automatically deducted, may voluntarily elect coverage.  RCW 50B.04.090.

[3] Plaintiffs also pleaded a claim for restitution, _see_ Compl. at ¶¶ 7.9–7.10, but given the delay in implementation of WA Cares (from January 1, 2022, to July 1, 2023), plaintiffs intend to withdraw this claim.  _See_ Pls.' Prop. Am. Compl. at ¶ 7.10, Ex. K to Birmingham Decl. (docket no. 21-11 at 27–28).

1    Defendants have brought a motion, docket no. 17, seeking to dismiss each of the

2    claims for lack of subject-matter jurisdiction.  For the reasons set forth in this Order, the

3    Court concludes it does not have jurisdiction for two reasons.  First, WA Cares is not

4    governed or preempted[4] by ERISA, as alleged by plaintiffs, and thus ERISA does not

5    confer jurisdiction on the Court.  Second, the Court lacks jurisdiction by operation of the

6    Tax Injunction Act, which provides that the Court may not "enjoin, suspend or restrain

7    the assessment, levy or collection of any tax under State law," if "a plain, speedy and

8    efficient remedy may be had in the courts of such State," 28 U.S.C. § 1341.  The Court is

9    persuaded that the challenged WA Cares premium constitutes a tax, and the Tax

10    Injunction Act "drastically" limits federal district court jurisdiction "to interfere with so

11    important a local concern as the collection of taxes."  _Rosewell v. LaSalle Nat'l Bank_, 450

12    U.S. 503, 522 (1981).  As a result, the Court cannot consider the merits of plaintiffs'

13    claims and must dismiss this action without prejudice.  Any legal challenge to WA Cares

14    must be brought in state court.

15    **Discussion**

16    Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendants present a facial,

17    rather than a factual, jurisdictional challenge.  A facial attack asserts that the allegations

18    of the complaint are insufficient on their face to invoke federal jurisdiction.  _See Safe Air_

19    _for Everyone v. Meyer_, 373 F.3d 1035, 1039 (9th Cir. 2004).  With respect to a facial

20    _____

21    [4] Section 514 provides that, with certain exceptions, ERISA "shall supersede any and all State

22    laws insofar as they may now or hereafter relate to any [non-exempt] employee benefit plan."
      29 U.S.C. § 1144(a).

23

ORDER - 3

1    jurisdictional challenge, a plaintiff is entitled to the same safeguards that apply to a

2    Rule 12(b)(6) motion to dismiss for failure to state a claim.  *See* *Friends of Roeding Park*

3    *v. City of Fresno*, 848 F. Supp. 2d 1152, 1159 (E.D. Cal. 2012).  The allegations of the

4    complaint are presumed to be true, *id.*, and the Court may not consider matters outside

5    the pleading without converting the motion into one for summary judgment, *see* *White v.*

6    *Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A federal court is presumed to lack

7    jurisdiction in a particular matter unless a contrary showing is made, *see* *Friends of*

8    *Roeding Park*, 848 F. Supp. 2d at 1159 (citing *Gen. Atomic Co. v. United Nuclear Corp.*,

9    655 F.2d 968,  968–69 (9th Cir. 1981)), and plaintiffs bear the burden of establishing that

10   the Court has subject-matter jurisdiction, *see* *Nat'l Wildlife Fed'n v. Johanns*, No. C04-

11   2169, 2005 WL 1189583, at *4 (W.D. Wash. May 19, 2005).

12   **A.    Federal Question**

13        Relying solely on ERISA,[5] plaintiffs assert that the Court has federal-question

14   subject-matter jurisdiction.  *See* Compl. at ¶ 2.1; *see also* 28 U.S.C. § 1331.  ERISA

15   § 502(e)(1), codified at 29 U.S.C. § 1132(e)(1), confers on federal district courts

16   "exclusive jurisdiction of civil actions" under Subchapter I of ERISA, except for claims

17

18   ---

[5] In their operative pleading, plaintiffs also mention specific provisions of the Constitution, as

19   well as 42 U.S.C. § 1983, the ADEA, and the Declaratory Judgment Act, *see* Compl. at ¶¶ 1.2,
     2.3, 5.29–5.32, 7.4, & 7.6, but they do not allege that federal-question jurisdiction may be
     premised on the Constitution or any statutes other than ERISA.  *See id.* at ¶ 2.1.  Indeed, a state

20   and related entities and officials may assert Eleventh Amendment immunity from suit under
     § 1983 and/or the ADEA, *see* *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *see also*

21   *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000), and the Declaratory Judgment Act, 28 U.S.C.
     §§ 2201–02, cannot serve as an independent basis for subject-matter jurisdiction, *see* *Fiedler v.*

22   *Clark*, 714 F.2d 77, 79 (9th Cir. 1983).

23

ORDER - 4

1  brought under § 502(a)(1)(B), as to which state courts have concurrent jurisdiction.

2  ERISA enumerates the types of claims that may be asserted and the categories of persons

3  who may assert them, and for purposes of the legal theories tendered in this matter,

4  plaintiffs must be either participants or beneficiaries of an "employee benefit plan."  *See*

5  29 U.S.C. §§ 1132(a)(2)–(3); *see also* 29 U.S.C. §§ 1002(7)–(8).  In moving to dismiss,

6  defendants did not raise the issue of whether plaintiffs can, as a matter of law, establish

7  that WA Cares constitutes an "employee benefit plan" as to which they are participants or

8  beneficiaries.  Because the question relates to the Court's jurisdiction, the parties were

9  directed to provide additional briefing, and counsel were afforded an opportunity to

10  present oral argument on the topic.

11          ERISA applies to "any employee benefit plan if it is *established or maintained* --

12  (1) by any employer engaged in commerce or in any industry or activity affecting

13  commerce; or (2) by any employee organization or organizations representing employees

14  engaged in commerce or in any industry or activity affecting commerce; or (3) by both."

15  29 U.S.C. § 1003(a) (emphasis added); *see also* 29 U.S.C. §§ 1002(1)–(3) (defining

16  "employee benefit plan" and its possible components, *i.e.*, an "employee welfare benefit

17  plan" and/or an "employee pension benefit plan").  WA Cares is a creation of the

18  Washington Legislature, which, in this context, is neither an employer nor an employee

19  organization as defined by ERISA.  *See* 29 U.S.C. §§ 1002(4)–(5) (defining "employee

20  organization" and "employer"); *see also* *Howard Jarvis Taxpayers Ass'n v. Cal. Secure*

21  *Choice Ret. Sav. Program*, 997 F.3d 848, 859–60 (9th Cir. 2021).  Because WA Cares is

22  not "established or maintained" by an employer and/or employee organization, it is not an

23

1    "employee benefit plan" and it is not governed by ERISA.  *See* *Howard Jarvis*, 997 F.3d

2    at 859–63.

3         Plaintiffs attempt to distinguish *Howard Jarvis*, arguing that employees of the

4    State of California were not required to participate in the state-managed retirement

5    savings plan challenged in that case, but employees of the State of Washington will be

6    subject to the premiums related to WA Cares.  Plaintiffs reason that, because WA Cares

7    will impact state employees, as well as employees of private entities, the Washington

8    Legislature operated as an "employer," within the meaning of ERISA, in establishing

9    WA Cares.  Plaintiffs further contend that, because WA Cares will extend benefits to

10   more than a *de minimis* number of private employees, WA Cares cannot qualify as a

11   "governmental plan" that is exempt from ERISA pursuant to 29 U.S.C. § 1003(b)(1).

12   Plaintiffs' creative contentions have no merit.

13        WA Cares is designed to assess premiums and offer LTC benefits regardless of

14   whether a person is employed by the State of Washington.  For example, an individual

15   might begin working for the State prior to July 2023, when WA Cares premiums will

16   become due, but then shift to the private sector and retire in July 2033; such person will

17   have paid WA Cares premiums for ten years and will be eligible for LTC benefits if

18   needed,[6] even though he or she was not employed by the State during the latter years of

19

20   _____

21   [6] *See* RCW 50B.04.060(2) (indicating that a "qualified individual" may become eligible for
     WA Cares benefits by filing an application and being evaluated as requiring assistance with at
22   least three activities of daily living); RCW 50B.04.050(1)–(2) (defining a "qualified individual"
     as someone who has paid premiums for (a) a total of ten years "without interruption of five or

23

ORDER - 6

1  the standard vesting period.  Thus, unlike when a state acts in its capacity as an employer

2  in offering health and/or pension plans that extend or accrue benefits only while

3  individuals are employed by the state, the State of Washington enacted WA Cares in its

4  role as sovereign.  Contrary to plaintiffs' assertion, ERISA does not provide the Court

5  with jurisdiction in this matter.

6  **B.**    **Tax Injunction Act**

7         The Tax Injunction Act "has its roots in equity practice, in principles of

8  federalism, and in recognition of the imperative need of a State to administer its own

9  fiscal operations." _Rosewell_, 450 U.S. at 522 (quoting _Tully v. Griffin, Inc._, 429 U.S. 68,

10  73 (1976)).  The latter consideration was "the principal motivating force" behind the Tax

11  Injunction Act.  _Id._  When Congress passed the Tax Injunction Act, it "knew that state tax

12  systems commonly provided for payment of taxes under protest with subsequent refund

13  as their exclusive remedy." _Id._ at 523.  This protocol for challenging the validity of a tax

14  law and/or its specific application allows "the States and their various agencies to survive

15  while long-drawn-out tax litigation is in progress." _Id._ (quoting S. Rep. No. 75-1035, at 1

16  (1937)); _see also_ _California v. Grace Brethren Church_, 457 U.S. 393, 410 (1982) ("If

17  federal declaratory relief were available to test state tax assessments, state tax

18  administration might be thrown into disarray . . . .  During the pendency of the federal

19  suit the collection of revenue under the challenged law might be obstructed, with

20

21  _____

22  more consecutive years"; (b) three years within the last six years from the date of application for
   benefits; or (c) at least one year, if the person was born before January 1, 1968).

23

ORDER - 7

1  consequent damage to the State's budget, and perhaps a shift to the State of the risk of

2  taxpayer insolvency." (quoting _Perez v. Ledesma_, 401 U.S. 82, 127 n.17 (1971)

3  (Brennan, J., concurring in part and dissenting in part))).  To determine whether the

4  Tax Injunction Act deprives the Court of jurisdiction, the Court must address whether

5  the WA Cares premium is a tax and, if so, whether plaintiffs have a "plain, speedy and

6  efficient" remedy in Washington's courts.  _See_ 28 U.S.C. § 1341.

7      **1.**    **Tax or Fee**

8      For purposes of the Tax Injunction Act, "[n]ot every exaction by state authorities

9  is a tax." _Hexom v. Or. Dep't of Transp._, 177 F.3d 1134, 1135 (9th Cir. 1999).  Thus,

10  courts addressing the applicability of § 1341 have had to distinguish between taxes and

11  fees.  _See id._ at 1136; _see also Lavis v. Bayless_, 233 F. Supp. 2d 1217, 1219 (D. Ariz.

12  2001) (describing the "classic 'tax'" and the "classic 'regulatory fee'").  The Ninth

13  Circuit has adopted a three-part test and, in addressing the question of whether the

14  challenged WA Cares premium is a tax, the Court must consider:  "(1) the entity that

15  imposes the assessment; (2) the parties upon whom the assessment is imposed; and

16  (3) whether the assessment is expended for general public purposes, or used for the

17  regulation or benefit of the parties upon whom the assessment is imposed." _Bidart Bros._

18  _v. Cal. Apple Comm'n_, 73 F.3d 925, 931 (9th Cir. 1996) (citing _San Juan Cellular Tel._

19  _Co. v. Pub. Serv. Comm'n of P.R._, 967 F.2d 683 (1st Cir. 1992)); _see also Qwest Corp. v._

20  _City of Surprise_, 434 F.3d 1176, 1183 (9th Cir. 2006); _Lavis_, 233 F. Supp. 2d at 1220–23.

21  / / /

22  / / /

23

ORDER - 8

1

### a.    _Factor 1_:  The Entity Imposing the Assessment

2       When an assessment is imposed directly by a legislature, as opposed to an

3 administrative agency, it is more likely to be a tax.  _Bidart_, 73 F.3d at 931.  As plaintiffs

4 concede, _see_ Pls.' Resp. at 6 n.4 (docket no. 20), this factor weighs in favor of the

5 WA Cares premium being a tax.

6

### b.    _Factor 2_:  The Parties Required to Pay the Assessment

7       When an assessment is imposed upon a broad, rather than a narrow, subset of the

8 population, it is more likely to be a tax.  _Bidart_, 73 F.3d at 931.  This factor also weighs

9 in favor of the WA Cares premium being a tax.  Beginning July 1, 2023, the premium

10 must be paid by anyone who has not applied for and been granted an exemption and who

11 is employed by an "employer," meaning (i) an individual or organization (other than the

12 United States of America) having any person in employment, (ii) the State and its

13 institutions and agencies, and (iii) any unit of local government, _see_ RCW 50B.04.010(8)

14 & RCW 50A.05.010(7).  _See_ RCW 50B.04.080 & .085; _see also_ Laws of 2022, ch. 2, § 2.

15 Plaintiffs contend, however, that the WA Cares premium does not apply to a broad group

16 of parties because it is "optional" for (i) certain employees that acquired private LTC

17 insurance, (ii) persons with a permanent residence outside Washington, certain veterans,

18 certain military spouses or domestic partners, and temporary workers with nonimmigrant

19 visas, (iii) self-employed individuals, and (iv) federally-recognized tribes.[7]

20 _____

21 [7] Offering federally-recognized tribes the option to opt in or opt out of WA Cares "at any time
for any reason," _see_ RCW 50B.04.095, is consistent with principles of sovereign immunity.  _See_

22 _Confederated Tribes & Bands of the Yakama Indian Nation v. Gregoire_, 658 F.3d 1078, 1084

23

ORDER - 9

At the Court's request, the parties provided the following estimates concerning the number of individuals potentially affected by WA Cares:

- Employees within Washington in 2023:                                          4.1 million
- Employees required to pay WA Cares premiums in 2023:            3.4 million
- Approved applications for private-LTC-insurance exemption[8]:      473,510
- Persons potentially exempt pursuant to Laws of 2022, ch. 2, § 2:   235,529
- Self-employed persons in 2023:                                                  233,191
- Self-employed persons likely to opt in to WA Cares:          less than 40,000

Defs.' Supp. Br. at 1 (docket no. 44); Amundson Decl. at ¶¶ 2–11 (docket no. 45); <u>see also</u> Pls.' Supp. Br. at 2–3 (docket no. 46). Neither these figures nor the allegations in the operative pleading support plaintiffs' proposition that the quantity of people who may and/or will "opt out" or who are not covered is so large as to render WA Cares applicable to only a narrow range of employees.[9]

---

(9th Cir. 2011) ("The Constitution vests the Federal Government with exclusive authority over relations with Indian tribes . . . , and in recognition of the sovereignty retained by [the] tribes . . . , Indian tribes and [registered] individuals generally are exempt from state taxation within their own territory." (alterations in original, quoting <u>Okla. Tax Comm'n v. Chickasaw Nation</u>, 515 U.S. 450, 455 (1995))). Extending this courtesy to federally-recognized tribes does not indicate that the WA Cares premium is not a tax.

[8] This exemption is a transitory measure, intended as a safe harbor for adults who already have LTC coverage; neither minors nor persons who purchase private insurance on or after November 1, 2021, can invoke this exemption, and application for the exemption must be made by December 31, 2022. <u>See</u> RCW 50B.04.085. In other words, current employees who did not have LTC policies before November 1, 2021, or do not apply for the exemption by the deadline, and who are not otherwise exempt, as well as all of Washington's children, as they age and join the work force, will be subject to withholding pursuant to WA Cares, regardless of whether they also buy private LTC insurance.

[9] Contrary to plaintiffs' apparent assertion, the exemptions and exclusions at issue do not distinguish WA Cares premiums from other assessments in Washington that are undisputedly taxes. For example, (i) a variety of entities and types of revenue are exempt from Washington's business and occupation tax, <u>see</u> RCW Chapter 82.04; (ii) an entire chapter of the Revised Code

1              c.      *Factor 3*:  The Ultimate Use of the Assessment

2          When the first and second factors lead to contradictory results, courts emphasize

3    the third inquiry, which evaluates how "the revenue is ultimately spent."  *See Qwest*, 434

4    F.3d at 1183; *see also Bidart*, 73 F.3d at 932.  Given, however, the consistent outcomes

5    in this matter under the first and second tests, the Court does not give any extra weight to

6    the third factor.  The Ninth Circuit has observed that, although assessments placed in

7    special funds and used for only special purposes are less likely to be taxes, their

8    segregation from the general revenues of a state does not mean they are not taxes, for

9    purposes of the Tax Injunction Act, if they are or will be expended to provide "a general

10   benefit to the public."  *Bidart*, 73 F.3d at 932.

11         Although *Bidart* articulates the standards applicable to the Court's decision in this

12   matter, *Bidart* is factually distinguishable.[10]  Unlike the fees at issue in *Bidart*, WA Cares

13   _____

14   of Washington is devoted to setting forth the numerous exemptions from property taxes, *see*
     RCW Chapter 84.36; and (iii) certain transactions are exempt from retail sales taxes, *see*
15   RCW Chapter 82.08.  Indeed, like WA Cares, the retail sales tax scheme respects state
     boundaries and either does not apply to, or authorizes an exemption in the form of a refund with
16   respect to, certain purchases by non-residents, provided that certain requirements are met.  *See*
     RCW 82.08.0264, .0266, .0268, .0273, .0279, & .700.  Neither the number nor the types of
17   exemptions set forth in RCW Chapter 50B.04 suggest that WA Cares is something other than a
     tax.

18   [10] In *Bidart*, a major producer of apples in California sought declaratory and injunctive relief
     from a fee on apples that was assessed, with legislative authorization, by the California Apple
19   Commission.  73 F.3d at 927 & 931.  The assessment was imposed only upon apple producers,
     placed in a segregated fund, and used only for Commission purposes, which was primarily to
20   promote the purchase of California apples.  *Id.* at 932–33.  Upon termination of the Commission,
     by a vote of the majority of California's apple growers, the collected funds were to be returned to
21   the regulated businesses, and not transferred to the state's general fund.  *Id.* at 928 & 932.  The
     Ninth Circuit reasoned that the Commission's expenditures to educate the public about the
22   "healthful properties" and "nutritional value" of apples was only "an indirect public benefit" and
     that, because the Commission's assessments were "ultimately imposed by a non-legislative body

23

premiums are mandated by the Washington Legislature, as opposed to an agency or commission with delegated authority, can be appropriated by the Legislature for another purpose[11] (subject to the requirement that notice with statutorily-specified content be provided by mail to all qualified individuals, *see* RCW 50B.04.100(3)), and will be used to directly[12] benefit all members of the public who paid premiums for the requisite period and meet the criteria for receiving LTC services.

---

on a small number of organizations, kept segregated from general California funds, and spent only for a purpose that does not directly benefit the public at large," the apple fees were not taxes within the meaning of the Tax Injunction Act. *Id.* at 932–33.

[11] Plaintiffs' contention that WA Cares premiums may not be used for other purposes relies on a misinterpretation of RCW 50B.04.100(2), which states: "The revenue generated pursuant to this chapter shall be utilized to expand long-term care in the state. These funds may not be used either in whole or in part to supplant existing state or county funds for programs that meet the definition of approved services." This provision does not preclude WA Cares revenue from being used outside the LTC arena; rather, it seeks to preserve other sources of LTC funding, like Medicaid, by prohibiting the use of WA Cares benefits as a substitute for them.

[12] Plaintiffs argue that defendants identify only an "indirect" benefit from WA Cares, namely "keeping a very small percentage of individuals off of Medicaid." Pls.' Resp. at 9 (docket no. 20). Such benefit seems direct, not indirect, and characterizing the percentage as "small" ignores the legislative findings underlying WA Cares. According to the Washington Legislature, the "*majority* of people over sixty-five years of age will need long-term services and supports within their lifetimes." RCW 50B.04.900(2) (emphasis added). The population of seniors in Washington currently exceeds one million and is projected to more than double by 2040. *Id.* In the absence of LTC insurance, seniors must rely on family care and spend their savings down to poverty levels before they can access LTC services through Medicaid. *Id.* In 2015, more than 850,000 unpaid family caregivers provided assistance valued at $11 billion, and those who left the workforce lost an average of $300,000 in income, as well as health and retirement benefits. *Id.* The current ratio of potential family caregivers for each senior is 7-to-1, but by 2030, the ratio is expected to decrease to 4-to-1. RCW 50B.04.900(4). Washington currently spends roughly six percent (6%) of its operating budget on LTC services and supports, and anticipates needing, by 2030, an additional $6 billion in funds for such purposes. RCW 50B.04.900(5). Based on caseload and demographic estimates, WA Cares is predicted to save the Medicaid program $898,000,000 in 2051–2053. RCW 50B.04.900(8).

ORDER - 12

i.   **General Versus Specific Revenue**

Plaintiffs argue that WA Cares premiums will not be expended for the public good, citing _Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc._, 651 F.3d 722 (7th Cir. 2011) (en banc).  According to plaintiffs, the Seventh Circuit has defined a tax as an assessment that, not only recovers the specific costs for which the assessment is imposed (_i.e._, in this case, the amounts to be disbursed as LTC benefits), but also generates general revenues for the state.  _See_ Pls.' Resp. at 8–9 (docket no. 20) (citing 651 F.3d at 728–29 & 730).  _Empress Casino_ does not stand for such proposition.  Writing for the en banc majority in _Empress Casino_, Judge Posner observed that, if an exaction merely reflects a reasonable estimate of the amount "imposed by the person required to pay" it, then the assessment is a "user fee," but if the exaction is calculated not only to recover a cost incurred by the governmental entity, but also to generate revenues to offset unrelated expenses or confer unrelated benefits, then it is a "tax."  _See id._ at 728–29.  Contrary to plaintiffs' assertion, nothing in _Empress Casino_ suggests that a tax (as opposed to a fee) must both "recover the cost for which the assessment is imposed" and generate extra "revenue that can be used for the public good."  _See_ Pls.' Resp. at 8–9 (docket no. 20) (emphasis removed).  Moreover, this tax-versus-fee paradigm is ill-suited to an analysis of WA Cares, which does not involve or envision any services provided by, or reimbursement to, the State; rather, Washington intends to collect from the population of non-exempt workers funds with which they may in the future, if necessary, pay third parties to assist them with the activities of daily living.

/ / /

1

####                     ii.    <u>Similarity to Unemployment Compensation</u>

2           As aptly noted by defendants, WA Cares is analogous to the unemployment

3    insurance scheme, payments pursuant to which are undisputedly taxes.[13]  Plaintiffs'

4    arguments to the contrary lack merit.  Plaintiffs' assertion that, whereas WA Cares uses

5    the term "premium," unemployment compensation exactions are denominated as "taxes"

6    is simply incorrect.  Washington uses the label "contributions," not taxes, to describe "the

7    money payments due to the state unemployment compensation fund" or to "the special

8    account in the administrative contingency fund."  RCW 50.04.070; <u>see also</u> <u>Bates v.</u>

9    <u>McLeod</u>, 11 Wn.2d 648, 657, 120 P.2d 472 (1941) (Chapter 162 of the Laws of 1937,

10   codified in RCW Title 50, "imposes a tax, or, as the act phrases it, a 'contribution,' for

11   the privilege of employing others").  Moreover, the vocabulary used in the state statutes

12   is irrelevant because whether an assessment is a "tax" for purposes of the Tax Injunction

13   Act is a question of federal, not state, law.  <u>See</u> <u>Empress Casino</u>, 651 F.3d at 728 & 730

14   (also observing that "tax" is an "unpopular" and therefore avoided designation); <u>MCI</u>

15   <u>Commc'ns Servs., Inc. v. City of Eugene</u>, 359 F. App'x 692, 695 (9th Cir. 2009) ("the fact

16   that Ordinance No. 20083 labels a charge as a 'fee' rather than a 'tax' is not controlling").

17

18   _____

19   [13] Under the Federal Unemployment Tax Act ("FUTA"), employers must pay an excise tax on
     wages paid to employees in "covered" employment, but they are entitled to a credit of up to
20   ninety percent (90%) of the federal tax for contributions they make to a federally-approved state
     unemployment compensation program.  <u>See</u> <u>Grace Brethren</u>, 457 U.S. at 396–97 (citing 26
21   U.S.C. §§ 3301–3311).  In <u>Grace Brethren</u>, the Supreme Court held that the Tax Injunction Act
     deprived the federal courts of jurisdiction over the claims of certain religious schools in which
22   they asserted FUTA and its related state laws violated the Establishment and Free Exercise
     Clauses of the First Amendment.  <u>See id.</u> at 407–19.

23

1        Equally unavailing are plaintiffs' attempts to distinguish WA Cares on the grounds

2   of being the first of its kind and/or a stand-alone state program, in contrast to FUTA,

3   which plaintiffs characterize as "a traditional exercise of police power" that establishes

4   "a federal-state social partnership," Pls.' Resp. at 11 (docket no. 20).  Novelty of a state's

5   revenue-generating scheme is not dispositive.  See MCI Commc'ns, 359 F. App'x at 695

6   (concluding that the "unusual" nature of Eugene's challenged ordinance, which allowed

7   the City to accept telecommunications services as in-kind payment of the challenged tax,

8   "does not prove decisive").  Similarly, the absence of a federal mandate is not an

9   appropriate consideration.  The Tax Injunction Act was designed to limit, not necessitate,

10  federal interference "with so important a local concern as the collection of taxes,"

11  Rosewell, 450 U.S. at 522, and plaintiffs cite no authority to support a theory that state

12  taxes imposed without a concomitant federal program are subject to challenge in federal

13  courts.[14]

14  

_____

15  [14] Plaintiffs further contend that WA Cares does not enjoy the same ERISA exemption as
    unemployment compensation plans.  ERISA does not apply to an "employee benefit plan" if it

16  "is maintained solely for the purpose of complying with applicable workmen's compensation
    laws or unemployment compensation or disability insurance laws."  29 U.S.C. § 1003(b)(3).

17  The way this exception functions is best illustrated by examining Washington's workmen's
    compensation (or industrial insurance) scheme.  With respect to industrial insurance, the State

18  allows an employer to either pay into the State's industrial insurance funds or qualify as a self-
    insurer.  RCW 51.14.010.  A self-insured employer may reinsure up to eighty percent (80%) of

19  its liabilities.  See RCW 51.14.020(5).  This reinsurance would be excluded from ERISA
    coverage because it would be maintained by an employer solely to comply with the State's

20  workmen's compensation requirements.  See 29 U.S.C. § 1003(b)(3).  In contrast, Washington's
    various industrial insurance funds are not subject to ERISA for an entirely different reason,

21  namely, because they are creatures of the Washington Legislature, were not established or
    maintained by an employer or an employee organization, and are not "employee benefit plans."

22  See 29 U.S.C. §§ 1002(1)–(3).  The same is true of the State's unemployment compensation
    scheme, which requires employers to contribute to the State's special funds, see RCW 50.16.010

23

Finally, plaintiffs' description of unemployment compensation fund contributions (paid by the employer) as "pre-tax" and WA Cares premiums (paid by the employee) as "after-tax" is inaccurate.  Under Washington law, the unemployment compensation fund contributions paid by employers "shall not be deducted, in whole or in part, from the remuneration of individuals in employment of the employer."  RCW 50.24.010.  In other words, the taxes paid by employers are not part of employees' wages and should not appear on employees' paystubs as either "pre-tax" or "after-tax" deductions.  WA Cares does not itself specify whether premiums, which are to be collected via payroll deductions, should or should not be included as gross income, or in other words, whether the premiums are "after-tax" or "pre-tax" deductions, respectively.  *See* RCW 50B.04.080(2)(a).[15]  Plaintiffs' presumption that WA Cares premiums will be treated the same way as private insurance premiums[16] is speculative, and it ignores the

_____

& 50.24.010, and plaintiffs' reliance on the ERISA exception set forth in § 1003(b)(3) is misplaced.

[15] Plaintiffs' assertion that WA Cares premiums cannot be deducted "pre-tax" is not supported by the statute they cite, namely 26 U.S.C. § 125(f).  The referenced provision of the federal tax code applies to cafeteria plans, which are written plans under which "all participants are employees" and the participants "may choose among 2 or more benefits consisting of cash and qualified benefits."  *Id.* at § 125(d).  Long-term care insurance is not a "qualified benefit" for purposes of a cafeteria plan.  *Id.* at § 125(f)(2).  Thus, WA Cares is not a cafeteria plan for two reasons:  (i) it does not offer a choice among two or more benefits; and (ii) it does not involve any "qualified benefits."  Section 125(f) does not govern.

[16] Private (self-paid) LTC insurance premiums are currently deductible (if the federal taxpayer itemizes) as a component of "medical, dental, etc." expenses, to the extent that all "medical, dental, etc." expenses exceed seven and a half percent (7.5%) of adjusted gross income.  *See* 26 U.S.C. §§ 213(a) & (d)(10) (limiting the deductible amount of LTC insurance premiums to a range between $200 and $2,500, depending on the age of the taxpayer).  Plaintiffs offer the

1    possibility that the federal tax code might undergo revision to take into account the

2    differences between state-mandated premiums and private insurance.  Moreover, whether

3    WA Cares premiums are excluded from gross income or deductible from adjusted gross

4    income is not dispositive of whether they constitute taxes.[17]

5           In sum, all three _Bidart_ factors indicate that WA Cares premiums are taxes for

6    purposes of the Tax Injunction Act, and thus, the Court must proceed to evaluate whether

7    plaintiffs have "a plain, speedy and efficient remedy" available in state court.  _See_ 28

8    U.S.C. § 1341.

9           **2.      Remedies in State Court**

10          The no "plain, speedy and efficient remedy" exception to § 1341 is narrowly

11   construed.  _Ret. Fund Tr. of the Plumbing, Heating & Piping Indus. of S. Cal. v._

12   _Franchise Tax Bd._, 909 F.2d 1266, 1273 (9th Cir. 1990) (citing _Grace Brethren_, 457 U.S.

13   at 413).  The Tax Injunction Act requires only that an available state-court remedy satisfy

14   "certain minimal _procedural_ criteria."  _Rosewell_, 450 U.S. at 512.  If taxpayers may, in

15   state court, "press [their] constitutional [and/or other federal] claims while preserving the

16

17

18   flawed syllogism that a "tax" is not something deductible as a "medical, dental, etc." expense
     and therefore WA Cares premiums are not taxes.

19   [17] Indeed, not all state and local taxes are exempt from federal income taxation.  _See_ 26 U.S.C.
     § 164 (only (1) state, local, and foreign real property taxes, (2) state and local personal property

20   taxes, (3) state, local, and foreign income, war profits, and excess profits taxes, and (4) the
     generation-skipping transfer tax imposed on income distributions are deductible); _see also_ IRS

21   Topic No. 503 Deductible Taxes (available at https://www.irs.gov/taxtopics/tc503) (indicating
     that estate and inheritance taxes, certain local benefit taxes, and transfer (stamp) taxes on the sale

22   of property are not deductible, and that any deduction for state and local income, sales, and
     property taxes is capped at $10,000).

23

1    right to challenge the amount of tax due," and will receive a "full hearing and judicial

2    determination" of the controversy, then the federal court must withhold relief.  *See id.* at

3    512–14.  The usual delay in obtaining a state-court ruling does not mean that the remedy

4    is not "speedy."  *See id.* at 518–21 (holding that a two-year wait did not fall "outside the

5    boundary" of a "speedy" remedy).  Moreover, a legislative refusal to provide interest on

6    refunded taxes does not render the state-court remedy inadequate.  *Id.* at 522–28.  Finally,

7    requiring a party to pay the tax at issue before challenging it, or to make payment under

8    protest and force the government to apply for judgment in state court, does not make the

9    state remedies inefficient.  *Ret. Fund*, 909 F.2d at 1273.

10          Plaintiffs offer two reasons why they should not be left to litigate this matter in

11   state court:  (a) according to plaintiffs, ERISA vests this Court with exclusive jurisdiction

12   as to their claims; and (b) Washington's procedures are allegedly neither speedy nor

13   efficient, and delay will cause hardship to the employers who are plaintiffs in this matter.

14   Plaintiffs' invocation of § 502(e), ERISA's exclusive-jurisdiction provision, fails because

15   (i) WA Cares is not an "employee benefit plan" established or maintained by an employer

16   and/or an employee organization, *see* 29 U.S.C. §§ 1003(a) & 1132(e)(1); *Howard*

17   *Jarvis*, 997 F.3d at 859–60; and (ii) Ninth Circuit jurisprudence makes clear that

18   ERISA's exclusive-jurisdiction provision does not trump the Tax Injunction Act.  *See*

19   *Chase Manhattan Bank, N.A. v. City & County of San Francisco*, 121 F.3d 557, 558–60

20   (9th Cir. 1997); *Ashton v. Cory*, 780 F.2d 816, 823 (9th Cir. 1986) (concluding that

21   "Congress did not intend section 502(e)(1) of ERISA as an exception to the Tax

22   Injunction Act").

23

Plaintiffs' criticisms of the State's remedial processes do not show the requisite

lack of a "plain, speedy and efficient remedy." *See* 28 U.S.C. § 1341.  Plaintiffs have

two avenues for challenging WA Cares, namely an administrative adjudication and a

lawsuit brought pursuant to the Uniform Declaratory Judgments Act.[18]  Plaintiffs contend

that the administrative approach would not be "efficient" because they are required to

contest premiums before one agency and benefit determinations before a different

agency.[19]  Plaintiffs do not, however, even claim in this action that they are entitled to

benefits under WA Cares.[20]  Plaintiffs fail to show how an inability to bring an omnibus

---

[18] The validity of a state statute or a municipal ordinance or franchise may be challenged pursuant to the Uniform Declaratory Judgments Act, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the Washington State Attorney General must be served and is entitled to be heard.  *See* RCW 7.24.110; *see also Clark v. Seiber*, 49 Wn.2d 502, 503, 304 P.2d 708 (1956) ("The purpose of this provision is to protect the public, should the parties be indifferent to the result.  The state is interested in the constitutionality of its statutes as they affect the public welfare.").

[19] WA Cares permits appeals from determinations made by Washington's Health Care Authority ("HCA"), Department of Social and Health Services ("DSHS"), and Employment Security Department ("ESD").  *See* RCW 50B.04.120.  HCA and DSHS decisions are subject to appeal in accordance with the Administrative Procedure Act ("APA"), and those two agencies are required to adopt standards for eligibility and benefit determinations.  RCW 50B.04.120(1).  Claims relating to premium liability and premium collection fall within the purview of ESD. *See* RCW 50B.04.120(2).  ESD has already promulgated regulations related to WA Cares and adopted the Model Rules of Procedure.  *See* WAC 192-925-005.  The Model Rules of Procedure state that they are not intended to "diminish the constitutional rights of any person or to limit or modify additional requirements imposed by statute."  WAC 10-08-220.  ESD regulations broadly define an "aggrieved party," who may file an appeal to ESD, as any interested party (who may be a current or former employee or employer) who receives an adverse decision from (i) ESD, as to which the department has provided notice of appeal rights, (ii) the Office of Administrative Hearings, or (iii) the ESD Commissioner's review office.  WAC 192-900-005 & -025.

[20] Plaintiffs Pacific Bells, LLC, BrunswikSt., LLC, and WOW Distributing, Inc. are employers, who would not themselves be eligible for WA Cares benefits.  Plaintiff Melissa Johnston, who resides in Eagle Point, Oregon, now qualifies for an exemption from WA Cares, *see* Laws of 2022, ch. 2, § 2, and plaintiffs Lena Madden and Mike Lindbo, who are considering retiring in

1    adjudicative action concerning both premiums and benefits renders the State's

2    administrative remedies inadequate.[21]

3         Plaintiffs also argue that the state remedies are not "speedy" because they must

4    wait over a year from now to commence an administrative proceeding to challenge the

5    premiums, which will not be collected until July 1, 2023, and over four years from now

6    to appeal a determination concerning benefits, which will not be disbursed until July 1,

7    2026.  Plaintiffs' position runs contrary to the principles underlying the Tax Injunction

8    Act.  The Court must "guard against interpretations of the Tax Injunction Act which

9    might defeat its purpose and text." *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520

10   U.S. 821, 827 (1997).  The Tax Injunction Act "is grounded in the need of States to

11

12   _____

13   another state, seek to avoid paying premiums because they do not expect to benefit from the WA Cares program.  Only three plaintiffs might eventually seek WA Cares benefits, but apparently not for another ten years.

14   [21] The APA allows any person to "petition an agency for a declaratory order with respect to the applicability to specified circumstances of a rule, order, or statute enforceable by the agency."

15   RCW 34.05.240(1).  A petition must set forth "facts and reasons" showing that (a) "uncertainty necessitating resolution exists," (b) an actual controversy exists "such that a declaratory order

16   will not be merely an advisory opinion," (c) the uncertainty "adversely affects the petitioner," (d) the "adverse effect of uncertainty on the petitioner outweighs any adverse effects on others or

17   on the general public that may likely arise from the order requested," and (e) the petition complies with any additional requirements established by the agency.  *Id.*  Plaintiffs contend that

18   these requirements are "burdensome" and would have a "chilling effect" on their ability to seek declaratory relief.  Pls.' Resp. at 16 (docket no. 20).  Plaintiffs fail to explain, however, how

19   these criteria are more onerous than the burdens plaintiffs must carry to prevail on the claims they have asserted in this matter and to obtain the type of class-wide injunctive and declaratory

20   remedies contained in their prayer for relief.  *See* Compl. at § VIII (docket no. 1 at 20–21); *see also* *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (articulating the standard

21   for issuing a permanent injunction); Fed. R. Civ. P. 23 (setting forth the requirements for certifying a class).  Moreover, the declaratory-order procedure is optional, and plaintiffs may

22   pursue an adjudicative proceeding or administrative appeal without petitioning for a declaratory order.

23

1  administer their fiscal affairs without undue interference from federal courts," *id.* at 832,

2  and it strikes a balance in favor of states "defin[ing] and elaborat[ing] their own laws

3  through their own courts and administrative processes," *id.* at 826.  The "proper office"

4  of federal courts is not "to 'reform' state fiscal policies by providing a federal forum for

5  state taxpayers who object to the form or substance of laws designed to raise revenues for

6  state purposes."  *Empress Casino*, 651 F.3d at 728.  Plaintiffs inappropriately ask the

7  Court to assume that exact role and to invalidate a state's fiscal statute before it is fully

8  implemented or interpreted by the state's own administrative and judicial system.

9       With respect to an action pursuant to the Uniform Declaratory Judgments Act,

10  plaintiffs assert that the state court lacks jurisdiction under ERISA, *see* Pls.' Resp. at 17

11  n.8 (docket no. 20), but plaintiffs' view is incorrect for the reasons set forth in this Order.

12  Plaintiffs also dispute whether litigation seeking declaratory relief would be "speedy" and

13  "efficient" because they might need to first exhaust their administrative remedies.  For

14  support, plaintiffs cite merely a motion for summary judgment in which the defendants

15  in a state court case raised a lack of standing, as opposed to a failure to exhaust

16  administrative remedies.  *See id.* (citing Ex. J to Birmingham Decl. (docket no. 21-10 at

17  15–17)).  The two concepts, lack of standing and failure to exhaust, are entirely different,

18  and plaintiffs have cited to no authority that would inhibit them from immediately

19  proceeding in state court under the Uniform Declaratory Judgments Act.  The WA Cares

20  premium constitutes a tax, plaintiffs have a "plain, speedy and efficient" state remedy,

21  / / /

22  / / /

23

1   and the Tax Injunction Act deprives the Court of subject-matter jurisdiction.[22]  In light of

2   the Court's rulings, defendants' additional grounds for dismissal, namely lack of ripeness

3   and/or standing, as well as Eleventh Amendment immunity, need not be addressed.

4   **Conclusion**

5        For the foregoing reasons, the Court ORDERS:

6        (1)   Defendants' motion to dismiss, docket no. 17, is GRANTED, and this

7   action is DISMISSED without prejudice for lack of subject-matter jurisdiction.

8        (2)   The motions to intervene, docket nos. 24 and 30, brought by Service

9   Employees International Union Local 775, the Puget Sound Advocates for Retirement

10  Action, and AARP, are STRICKEN as moot.

11       (3)   The Clerk is directed to CLOSE this case and to send a copy of this Order

12  to all counsel of record.

13

14

15

16  _____

17  [22] During oral argument, plaintiffs' counsel sought a ruling from the Court that the WA Cares premium constitutes an income tax that is barred by the Washington State Constitution.  To the extent that plaintiffs intend to challenge WA Cares as violating Article VII, Section 1 of the

18  Washington State Constitution, which requires that all taxes "be uniform upon the same class of property within the territorial limits of the authority levying the tax," such aim underscores

19  exactly why this matter should be litigated within the State's administrative and/or judicial system.  *See* *Kunath v. City of Seattle*, 10 Wn. App. 2d 205, 216 & n.43, 444 P.3d 1235 (2019)

20  (observing that "Washington courts have the power to hear constitutional challenges to tax laws").  Moreover, because plaintiffs might raise this argument in other proceedings, the Court

21  hereby clarifies that its treatment of the WA Cares premium as a "tax" is solely for purposes of the Tax Injunction Act and ascertaining whether the Court has subject-matter jurisdiction.  This

22  decision has no preclusive effect on a state agency, administrative tribunal, or court in addressing the merits of plaintiffs' claims, as currently formulated or later revised or supplemented.

23

ORDER - 22

1    IT IS SO ORDERED.

2    Dated this 21st day of April, 2022.

3

4                                        _____
                                         Thomas S. Zilly
5                                        United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 23